951 P.2d 889

In the Matter of a Member of the State Bar of Arizona, William M. PIATT, IV, Respondent.

No. SB–96–0064–D.
Disc. Comm. Nos. 91–0843 and 91–1522.

Supreme Court of Arizona, En Banc.

Dec. 24, 1997.

Mandate and Judgment Issued Jan. 16, 1998.

Stephen G. Montoya, Phoenix, for William M. Piatt, IV.

Patricia A. Sallen, Bar Counsel, Phoenix, State Bar of Arizona.

## OPINION

MARTONE, Justice.

This is a lawyer disciplinary proceeding. The Hearing Officer recommended that William M. Piatt, IV, be publicly censured. The Disciplinary Commission agreed and also recommended a one-year period of probation during which Piatt would participate in the State Bar's membership assistance program and complete a counseling program. Two members of the Commission dissented, recommending suspension instead. Piatt appeals to this court under Rule 53(e), Ariz. R.Sup.Ct., as it existed before its recent amendment provided for discretionary review. We adopt the recommendation of the Disciplinary Commission.

### I. Background

Piatt did not object to the Hearing Officer's report and the Commission unanimously adopted the Hearing Officer's findings of fact and conclusions of law. We thus state the facts as found by the Hearing Officer and adopted by the Commission.

In May of 1990, twenty-year-old client A retained Piatt to represent her in a domestic relations action. During the initial interview, Piatt asked her whether she had ever masturbated at the age of fourteen. In a later meeting, he told her she looked delicious and that it would be even better if her skirt were four inches shorter. At still another meeting, he asked her if she had ever had a sexual relationship without emotional involvement and told her that she needed somebody like him who could take care of her needs. Client A told Piatt that she did not appreciate the way he talked and asked him to direct his attention to her divorce.

Piatt later asked client A to come to his house to prepare for a post-decree hearing. When she arrived, Piatt was in his bathrobe.

After the meeting, Piatt asked her to stay, and told her that if she was not going to respond to him, he could no longer represent her unless she came up with a lot more money.

During the same time frame, client B retained Piatt to represent her in a domestic relations action. During the representation, he frequently made inappropriate sexual comments. At a luncheon meeting, he made lewd suggestions about things they could do under the tablecloth. When they got back to the office, Piatt smacked his lips and told her a chemical attraction existed. Client B left the office in shock. She then sent him a letter saying she did not want to get involved and that she hoped it would not affect his professional performance on her behalf. The following week Piatt called her about a proposed property settlement which she did not like. Piatt told her that if he had to rewrite the papers it was going to cost her a lot more money. At a hearing the next day, she felt pressured to accept the agreement.

The Hearing Officer found that Piatt's denials and explanations lacked any credibility and that he had violated ER 1.7(b), and Rule 41(g), Ariz.R.Sup.Ct. After reviewing the Commission's report and the briefs, we solicited supplemental briefs on the question of suspension and scheduled the case for oral argument.

## II. Analysis

Piatt argues that his conduct was not clearly unethical at the time it was committed. Relying on *In re Evans*, 113 Ariz. 458, 556 P.2d 792 (1976), he contends that it is not proper to discipline a lawyer for debatable conduct. The State Bar contends that there is nothing debatable about the ethical impropriety of sexually harassing one's clients. We agree with the State Bar.

A lawyer is a fiduciary with a duty of loyalty, care, and obedience to the client. The relationship is, and must be, one of utmost trust. It matters not that the words "sexual harassment" are not used in our Rules of Professional Conduct. ER 1.7(b) prohibits a lawyer from representing a client if that representation is going to be material-

ly limited "by the lawyer's own interests." Clearly, sexual harassment by a lawyer serves the lawyer's interest and not the client's. Asking wholly inappropriate questions and making obscene comments to a client undermines trust in the lawyer and the representation.

Indeed, this case went beyond sexual harassment. Piatt told client A that unless she responded sexually to him he could no longer represent her unless she came up with a lot more money. Client A had already invested time and energy in Piatt as her lawyer. It is hard to imagine a more egregious case of putting one's interests ahead of the client's. Piatt also put his interests ahead of client B's.

In 1994, we considered a petition under Rule 28, Ariz.R.Sup.Ct., to adopt a rule that would prohibit lawyers from requesting, requiring or demanding sexual relations with a client as a condition of professional representation. *In re Rule 42*, Ariz.R.Sup.Ct., R–94–0003. We denied the petition, stating that "the problem addressed . . . is covered by the existing rules." Order of May 18, 1994. We continue to believe the obvious— that we do not need a specific rule against attempting to extort sexual conduct from a client. Rule 42, Ariz.R.Sup.Ct., does not purport to describe in exhaustive detail the different ways in which a lawyer may breach the fiduciary duty to the client. For example, our rules do not say that a lawyer shall not threaten, intimidate, or strike a client. They do not say that a lawyer must not steal from a client. But who would doubt that these are breaches?

Nor does Rule 41, Ariz.R.Sup.Ct., purport to exhaust the duties and obligations of members of the Bar. It is true, as Piatt argues here, that Rule 41(g), which requires lawyers to "abstain from all offensive personality" is quite general. But this case does not come close to the outer contours of the rule. Piatt's behavior here is offensive under any standard. This is not just a case of a lawyer using offensive language. This is a case of exploitation and extortion. We thus reject Piatt's argument and agree with the Commission's conclusion that "he violated the trust that is vital to every lawyer-client rela-

tionship." Disciplinary Commission Report at 7.

Piatt next argues that the Commission's recommendation of probation is unjustified and should be rejected. We disagree. We agree with the Commission that Piatt could reoffend unless he comes to grips with his problem. The membership assistance program of the State Bar could be very helpful. And we agree with the Commission that counseling should help Piatt stop his destructive behavior before any other clients are harmed.

Piatt next argues that his misconduct was not proved by clear and convincing evidence. The Hearing Officer believed the clients and did not believe Piatt. After reviewing the record, we agree that his misconduct was proved by clear and convincing evidence.

■ Normally at this point, having rejected each of Piatt's arguments, we would simply adopt the Disciplinary Commission's recommendation as our own. However, we solicited briefs on the question of possible suspension because some members of this court thought that a public censure might be too lenient. Others would have ordered suspension had they been making the decision in the first instance. But the State Bar did not appeal from the Disciplinary Commission Report and Piatt did. In every other setting in which a party appeals, one of two things is expected. If one prevails, one gets relief. If one does not prevail, the decision below is affirmed. There is no "upping the ante." No one expects that by appealing, things will get worse. Our ultimate authority over disciplinary matters makes upping the ante possible. But unless that power is exercised rarely and only in the clearest of situations, many lawyers will not risk an appeal even where they have legitimate . and reasonable claims to make.

■ We understand the outrage Piatt's behavior inspires. The purpose of lawyer discipline, however, is not to punish the lawyer but to protect the public. *In re Brown,* 184 Ariz. 480, 483, 910 P.2d 631, 634 (1996). Piatt has never before been the subject of lawyer discipline in over twenty years of active practice. Considered deliberation

suggests that suspension is not necessary to deal with Piatt's problems and to protect the public. *See, e.g., People v. Bergner,* 873 P.2d 726 (Colo.1994). A public censure and the publication of this opinion will get Piatt's attention. And supervised probation with counseling is more likely than unsupervised suspension to ensure that this behavior will never happen again. The prospect that non-compliance will lead to revocation of probation, suspension or disbarment is likely to be a powerful incentive to change. We thus defer to the recommendation of the Hearing Officer, who heard the witnesses, and the Disciplinary Commission, which gave the matter careful and reflective consideration.

### III.   Disposition

Piatt is hereby publicly censured. He is assessed fees and costs as may be taxed and allowed. He is placed upon probation for a period of one year effective thirty days after the filing of this opinion, under the following terms and conditions:

1.   Piatt shall participate in the membership assistance program of the State Bar of Arizona.

2.   At his sole expense, Piatt shall successfully complete a program of counseling appropriate for his misconduct, selected and monitored by the State Bar of Arizona.

3.   During the probationary period, Piatt shall be supervised by a practice monitor appointed by the State Bar of Arizona who shall consult with Piatt and his clients as necessary to ensure that Piatt's misbehavior has ceased forthwith.

4.   Failure to comply or cooperate will lead to suspension, disbarment or other disposition as the circumstances may warrant.

MOELLER, J., concurs.

### MANDATE AND JUDGMENT

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and this Court having considered the matter, filed its Opinion on the 24th day of December, 1997.

The time for filing a Motion for Reconsideration has expired and no motion was filed.

IT IS ORDERED, ADJUDGED AND DECREED that WILLIAM M. PIATT, IV., a member of the State Bar of Arizona, is hereby censured for conduct in violation of his duties and obligations as a lawyer pursuant to the Opinion of this Court.

IT IS FURTHER ORDERED that WILLIAM M. PIATT, IV., is placed upon probation for a period of one year effective January 23, 1998 in accordance with the conditions set forth in the Opinion filed December 24, 1997.

IT IS FURTHER ORDERED that pursuant to Rule 52(a)(8), Rules of the Supreme Court of Arizona, the State Bar of Arizona is granted judgment against WILLIAM M. PIATT, IV., for costs incurred by the State Bar of Arizona in the amount of $5,506.54, together with interest at the legal rate from the date of this judgment.

ZLAKET, Chief Justice, specially concurring.

While I share Justice Feldman's frustration with the recommendation of the Disciplinary Commission, I cannot agree that this court should "up the ante" in terms of the sanction to be imposed. No other type of legal proceeding requires a party to appeal at his or her peril. Not even the perpetrator of a vile and unimaginable crime faces the risk of an increased sentence when seeking relief from a higher court. I therefore believe that we must be extremely cautious in our use of this extraordinary power.

The *Wade* decision, with which I have more than a little familiarity, does not support the dissent's position. There we said:

> The record demonstrates that the hearing committee was unaware of respondent's prior disciplinary matter, which was still pending when the findings in this case were made. The Disciplinary Commission was aware of the earlier matter, but did not consider it in aggravation because it was not yet final. We are not so constrained, and believe that our consideration

of the previous disciplinary proceeding is essential to a proper disposition here.

174 Ariz. at 17, 846 P.2d at 830.

In the present case, however, all aggravating factors were known and considered by the Disciplinary Commission when it rendered its decision. Though I might have come to a different conclusion, I am prepared to defer to its recommendation. *In the Matter of Wolfram,* 174 Ariz. 49, 52, 58–59, 847 P.2d 94, 97, 103–04 (1993).

FELDMAN, Justice, concurring in part and dissenting in part.

I fully agree with the court's well-reasoned exposition on all points except that of the sanction to be imposed on Respondent. Ordinarily, I would defer to the recommendations of the Disciplinary Commission ("Commission") and join the majority. I strongly disagree, however, with the sanction on policy grounds and must therefore dissent from that portion of the opinion.

In my view, the censure recommended by a majority of the Commission and approved by the court is far too lenient and fails to accomplish one of the most important objectives of discipline. In addition to preventing repetition by the offender and deterring similar conduct by others—the only objectives expressly considered by the majority—disciplinary action also protects and maintains the legal system's integrity in the eyes of the public. *In re Fioramonti,* 176 Ariz. 182, 187, 859 P.2d 1315, 1320 (1993). Imposing discipline proportionate to the misconduct is important to our efforts to instill public confidence and maintain respect. *See In re Wade,* 174 Ariz. 13, 17–18, 846 P.2d 826, 830–31 (1993). In light of the especially egregious nature of Respondent's conduct, the court's lenient action clearly falls short. I would suspend Respondent for no less than six months.

## A. Upping the ante

The majority is concerned that by imposing a stiffer sanction after Respondent's appeal from the Commission's recommendation, this court would be upping the ante. I understand the danger of discouraging legitimate appeals and agree that only "rarely and

in the clearest of situations" should we up the ante. *Id.* But I strongly believe this is one of those situations.

Under the applicable version of Rule 53(e),[1] this court is the ultimate trier of fact and law. *In re Lincoln*, 165 Ariz. 233, 235, 798 P.2d 371, 373 (1990). We have both final authority and responsibility to decide on the appropriate sanction in every bar discipline case. *In re Owens*, 182 Ariz. 121, 126, 893 P.2d 1284, 1289 (1995); *In re Shannon*, 179 Ariz. 52, 68, 876 P.2d 548, 564 (1994), *modified*, 181 Ariz. 307, 890 P.2d 602 (1994). Thus, while we give great deference to the Commission's recommendation, it is our task to decide on the proper sanction required by facts and law, even when it may exceed the Commission's recommendation.

The risk that we might up the ante should not surprise Respondent. At every stage, Respondent had notice that the recommended sanction was not set in stone. In fact, the Commission *increased* the hearing officer's recommendation of censure without probation to censure with probation. Two Commission members, in a written dissent, concluded that suspension was the only acceptable sanction.[2] Because the dissent is part of the Commission's report, Respondent clearly had notice of the possibility of suspension. Respondent argued the issue of the increased sanction recommendation in his initial brief to this court. After reviewing the record and briefs submitted by Respondent and the State Bar, we requested supplemental briefing and oral argument on the specific issue of whether censure or suspension was the appropriate sanction. Thus, Respondent was given notice and an opportunity to be heard on the issue of suspension.

There is ample authority for this court to increase a recommended sanction. We have increased the sanction in several previous matters, even those, like the present, in which the lawyer appealed and the bar did not cross-appeal. *See Wade*, 174 Ariz. at 18, 846 P.2d at 831 (suspension increased to disbarment); *In re Hohn*, 171 Ariz. 539, 544, 832 P.2d 192, 197 (1992) (continuing legal education increased from eight to twenty hours); *In re Spear*, 160 Ariz. 545, 556–57, 774 P.2d 1335, 1346–47 (1989) (suspension increased from six months to five years); *In re Swartz*, 141 Ariz. 266, 278, 686 P.2d 1236, 1247 (1984) (suspension increased from thirty days to six months).[3]

The most recent case is noteworthy. In *Wade*, the Commission increased the recommended sanction from a thirty-day suspension to a two-year suspension. 174 Ariz. at 14, 846 P.2d at 827. On Wade's appeal to this court, after noting that the Commission had not been aware of Wade's prior record at the time it made its recommendation, we held that the offenses warranted the more stringent sanction of disbarment. *Id.* at 18, 846 P.2d at 831. In both *Wade* and the present case, the State Bar urged an increased sanction but did not cross-appeal. Wade, like Respondent, claimed that this court's consideration of the increased sanction violated his due process rights. Nevertheless, we held that Wade's misconduct "not only violates the confidence vested in him by [his] clients, but brings disrespect upon the legal profession and the justice system as a whole." *Id.* at 17–18, 846 P.2d at 830–31 (citation omitted). I believe that comment is equally applicable to the present case, in which the Commission's recommendation was based on an erroneous factual conclusion rather than a lack of information.

## B. Respondent's conduct

The majority quotes with approval from the Commission's report: Respondent "vio-

---

1. At the time Piatt initiated his appeal, October 16, 1996, this court was still acting pursuant to pre-amendment Rule 53(e) procedure. The 1996 amendment to Rule 53(e), adopted October 30, 1996, became effective December 1, 1996.

2. Disciplinary Commission Report, September 7, 1996, at 10 ("Having considered the Rules, Standards, and the result in *People v. Bergner*, in this particular case ... *we can come to no other*

*conclusion* than that Piatt should be suspended.") (emphasis added).

3. Ironically, even the majority in this very case has upped the ante. The probationary terms ordered by the court are more stringent than those recommended by the Commission. Although the change is not significant, it does show that the court recognizes its power to go beyond the Commission's recommendation.

lated the trust that is vital to every lawyer-client relationship." Disciplinary Commission Report, September 7, 1996, at 7. Despite this conclusion, the Commission recommended only censure, largely because it found that Respondent had acted only "negligently" instead of "knowingly." *Id.* at 7–8.[4] While the majority overlooks this premise, I find myself unable to agree with it or the result it produces. Under the applicable version of Rule 53(e), we make a de novo determination of fact. Even if we were to apply the present, amended version of Rule 53(e) and review only for clear error, I could not accept the negligence finding. There was nothing negligent about Respondent's conduct. It was obviously intentional and most certainly knowing. Piatt intended his conduct and must have known it was improper.

The Commission's finding of a negligent mental state was erroneously based on the conclusion that "while there is no doubt that Piatt should have known that his conduct was improper, it is not as clear that he knew that it created a conflict of interest." Report, at 7–8. Apparently, the Commission accepted the same faulty argument that Respondent made in this court: the rules do not specifically prohibit the offenses alleged; therefore, it was only debatable whether his behavior violated the Rules of Professional Conduct. He further argued that it would be improper to impose a serious sanction on a post hoc finding that the attempt to extort sexual favors from his clients violated some vague disciplinary rule. Given the facts of this case, however, there was nothing debatable about the impropriety of Respondent's conduct nor anything ambiguous in the disciplinary rule it .flouted. When he issued an ultimatum to his client—sexual favors in exchange for continued legal service—Respondent crossed a clear ethical line. Even he fails to assert that his actions were merely negligent, contending only that, lacking an explicit rule, he was not on notice that they were wrong. But Respondent is not less

culpable just because this is the first time such patently offensive behavior has come before this court.

The majority agrees that Respondent's claim is frivolous and disposes of it in correct, clear, and explicit terms: "Piatt's behavior here is offensive under any standard.... This is a case of exploitation and extortion. We thus reject Piatt's argument and agree with the Commission's conclusion that he 'violated the trust that is vital to every lawyer client relationship.' " Opinion at 27, 951 P.2d at 892. Putting it more specifically, the majority "continue[s] to believe the obvious—that we do not need a specific rule against attempting to extort sexual conduct from a client.... For example, our rules do not say that a lawyer shall not threaten, intimidate, or strike a client. They do not say that a lawyer must not steal from a client. But who would doubt that these are breaches?" Opinion at 26, 951 P.2d at 891. I agree. I would only add that the rules also do not expressly prohibit a lawyer from blackmailing his client into conferring sexual favors, but who would doubt that this was an equally serious breach? Respondent's argument to the contrary is disingenuous and meritless.

The fact that Respondent would advance this argument shows that the court is mistaken when it concludes "that suspension is not necessary to deal with Piatt's problems." Opinion at 27, 951 P.2d at 892. Respondent is obviously still unaware or unwilling to admit that he committed a serious breach. His oral argument in this court made it clear that he has very little regret. We do not require *mea culpas* or acts of contrition from lawyers accused of ethical impropriety, but when an egregious breach has been established, we should expect the lawyer to demonstrate that he understands his conduct was wrong and intolerable. The entire content of Respondent's brief (to paraphrase: I didn't do it; and if I did, I didn't violate the rules.) and oral argument (dedicated to excoriating

---

4. When a lawyer violates ER 1.7 (conflicts of interest), as Piatt did here, the *ABA Standards for Imposing Lawyer Discipline* determine the level of sanction based on the attorney's level of intent. When the attorney acts knowingly, suspension is warranted; when the attorney acts negligently, only public censure is warranted. *See* Standards 4.32, 4.33. The Standards additionally recommend that a suspension sanctions should not be less than six months. *See* Standard 2.3; *see also In re Miranda*, 170 Ariz. 270, 274, 823 P.2d 1278, 1282 (1992).

this court for even considering an increase in sanction) left no room for remorse. In fact, the entire record demonstrates Respondent's total indifference to the improprieties committed. He is evidently unwilling to recognize the wrongfulness of his conduct. This helps negate any grounds for leniency. *See ABA Standards For Imposing Lawyer Discipline,* Standard 9.2(g); *Wade,* 174 Ariz. at 18, 846 P.2d at 831 (continuing refusal to acknowledge wrongful nature of lawyer's conduct is aggravating circumstance).

### C. Proportionality

Finally, censure does not accurately reflect this court's policy of proportionality whereby similar fact patterns are matched to similar sanctions.[5] Because this is a case of first impression in Arizona, the majority uses a Colorado case, *People v. Bergner,* to support the sanction of public censure in response to an attorney's sexual misconduct with a client. However, the conduct at issue in *Bergner* was not as egregious as here. Bergner participated in a single, inappropriate conversation with sexual connotations. 873 P.2d 726, 727 (Colo.1994). As a result, the Colorado Supreme Court chose to impose public censure. *Id.* In contrast, this case involves *two* separate incidents of misconduct with *two* clients; Respondent went so far as to threaten withdrawal if one client did not acquiesce to his advances. In a more similar case, the Oklahoma Supreme Court suspended for sixty days an attorney charged with *two* counts of sexual misconduct involving separate instances of sexually explicit and inappropriate language with women who sought representation in divorce proceedings. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 938 P.2d 744, 745 (Okla.1997); *see also In re Rinella,* 175 Ill.2d 504, 222 Ill.Dec. 375, 375, 677 N.E.2d 909, 909 (1997) (three-year suspension warranted for lawyer's use of his position to gain sexual favors from clients and false testimony to disciplinary commission); *In re Feinman,* 225 A.D.2d 200, 200–01, 649 N.Y.S.2d 585 (App.Div.1996) (six-month sus-

pension warranted for making unsolicited sexual advances toward client and representing clients with adverse interests); *In re Gilbert,* 194 A.D.2d 262, 262–63, 606 N.Y.S.2d 478 (App.Div.1993) (one-year suspension warranted for extortion of sexual favors from two clients and sexually inappropriate comments toward co-workers). Looking at this spectrum of sexual misconduct cases, the majority here appears to have made an incorrect proportionality analysis and thus chosen an overly lenient sanction.

To summarize: Because this court has the ultimate responsibility to impose the proper sanction, Respondent has no valid complaint about upping the ante. His argument that his due process rights would be violated is thus without merit. He has been on notice of possible suspension since the Commission issued its report. Further, this court gave him the opportunity to brief and argue the point. In light of Respondent's knowing conduct, there is no doubt we should suspend him. His argument that he did not act knowingly, because he was unaware that the rules prohibited him from asking his client for sex in exchange for legal services, is completely frivolous. There should be no leniency simply because this is a case of first impression; the picture painted here is no prettier simply because it is the first time we have seen it. By lessening the sanction because this is a case of first impression, we fail to set an appropriate disciplinary standard. In doing so, we give the bar and the public the wrong message. This court should take a strong stand: sexual extortion is as bad as any other form of extortion, if not worse. Here, as in *Wade,* we should deal severely with a lawyer who attempted to prey on his clients. Such conduct "cannot be condoned." 174 Ariz. at 18, 846 P.2d at 831.

JONES, V.C.J., concurs.

---

5. Because sanctions against lawyers must have internal consistency to maintain an effective and enforceable system, this court looks to cases that are factually similar to the case before us. *In re Pappas,* 159 Ariz. 516, 526, 768 P.2d 1161, 1171

(1988). Yet, knowing that perfect uniformity cannot be achieved, this court has long recognized that the discipline in each situation must be tailored for the individual case. *In re Wines,* 135 Ariz. 203, 207, 660 P.2d 454, 458 (1983).