984 P.2d 539 (1999)
194 Ariz. 453
In the Matter of a Member of the State Bar of Arizona Alicia F. TOCCO, Respondent.
No. SB-98-0056-D.
Supreme Court of Arizona, En Banc.
September 14, 1999.
*541 Miller LaSota & Peters, P.L.C. By: Donald M. Peters, Phoenix, Attorneys for Alicia F. Tocco.
Robbins & Green By: Henry Jacobowitz, Phoenix, Attorneys for State Bar of Arizona.

OPINION
ZLAKET, Chief Justice.
¶ 1 This is a lawyer disciplinary proceeding. A hearing committee unanimously concluded that the respondent, Alicia F. Tocco, did not do "anything that violates the letter or spirit of the Ethical Rules" and recommended that all charges against her be dismissed. The Disciplinary Commission, with two members dissenting, reached a contrary conclusion and now urges that the respondent be censured and placed on two years probation.[1] We review this matter pursuant to Arizona Supreme Court Rule 53(e).

I. BACKGROUND
¶ 2 Alicia Tocco began practicing law in Arizona in 1979 as a commercial litigator who focused on agricultural law. Tocco represented Ivan and Betty Jonovich, together with three corporations and a partnership that they controlled. In 1990, the Jonoviches and their business entities were experiencing serious financial difficulties. Obligations to creditors were secured by the assets of two of the corporations, Food & Fibre Protection, Ltd. and Country Farm Supply, Inc., as well as by personal guarantees.
¶ 3 Mr. and Mrs. Jonovich were also indebted to Betty's mother, Mrs. Phillips, who had provided them and their companies with unsecured loans. To ensure that Phillips be paid before other creditors, the Jonoviches gave or attempted to give her a pledge of, or a security interest in, all of the issued and outstanding stock of OMA Enterprises, another of their holdings. At her clients' request, Tocco prepared documents related to this transaction. The hearing committee, however, found no credible evidence supporting the charge that she advised the clients to do anything that would improperly interfere with creditors' claims.[2] In fact, she cautioned them against pledging the stock of one corporation against the debts of another.
¶ 4 At some point, Mr. and Mrs. Jonovich requested Tocco's assistance in settlement discussions with their creditors. The respondent properly suggested that Mrs. Phillips retain independent counsel. Phillips then hired Harvey S. Brown, from whom Tocco rented office space. The committee found no evidence of collusive behavior based on this landlord-tenant relationship.
¶ 5 Acting on Brown's advice, Phillips locked everyone out of the premises occupied by OMA. However, she allowed Ivan Jonovich access to the area, and he promptly removed or threatened to remove assets against which the creditors arguably had claims. Jonovich took these actions without Tocco's knowledge and contrary to her advice.
¶ 6 The creditors commenced actions disputing the lock-out, causing the Jonoviches and their businesses to file for bankruptcy protection. Although she prepared the petitions and asset schedules, Tocco made it *542 clear that she would not represent the clients in a contested bankruptcy proceeding. To this end, she withdrew from their representation and severed her relationship with them. None of the parties fared well in the bankruptcy.
¶ 7 The state bar leveled a wide array of charges against the respondent, alleging that she had violated Ethical Rules 1.1 (requiring competent representation); 1.2(d) (prohibiting aiding clients in criminal or fraudulent conduct); 1.3 (requiring diligence); 1.7 (prohibiting conflicts of interest); 1.16 (governing withdrawal from representation); 3.1 (prohibiting frivolous assertions); 3.3(a) (requiring candor toward tribunal); 3.4(a) (prohibiting concealment of evidence) and (b) (prohibiting assistance in the giving of false testimony); 4.1 (prohibiting false statements of material facts); and 8.4(a) (dealing in general with violations of rules of conduct), (b) (dealing with the commission of criminal acts), (c) (prohibiting conduct involving fraud, deceit, dishonesty or misrepresentation), and (d) (prohibiting conduct prejudicial to the administration of justice). See Ariz. R. Sup.Ct. 42. The bar also charged violations of Arizona Supreme Court Rules 41(e) (obligation not to mislead judges) and 51(b) (conduct at variance with the rules of professional conduct) and (e) (willful disobedience of a rule or court order). Finally, it claimed that Tocco failed to respond to discovery requests regarding the disciplinary proceeding. With respect to the latter charge, the hearing committee determined that if and to the extent there were any such failures, they were not material. Moreover, it concluded that all relevant documents were provided to bar counsel.
¶ 8 For three days, the committee heard arguments and testimony. Following receipt of a post-argument memorandum from the bar, it exonerated the respondent of all charges. On review, however, the Disciplinary Commission determined that Tocco's conduct was in violation of Ethical Rules 1.2, 1.7, 3.3, and 4.1.

II. ANALYSIS
¶ 9 The Disciplinary Commission adopted the hearing committee's findings of fact in their entirety. It then independently made additional findings. This it may not do under our current rules. "The commission reviews questions of law de novo. In reviewing findings of fact made by a hearing officer or committee, the commission shall apply a clearly erroneous standard. In matters over which the commission has original jurisdiction, it may decide factual matters as necessary." Ariz. R. Sup.Ct. 53(d)(2). The notes to this section explain the rule:
Previously, the commission reviewed both findings of fact and conclusions of law de novo. Under the amendments, the commission will be bound by findings of fact made below unless they are "clearly erroneous." This is consistent with the commission's role in most cases as an intermediate appellate body which is bound by the record below. However, in cases over which the commission has original jurisdiction, such as some consent agreements and disability matters, the commission may make necessary factual findings to decide the matter before it.
Ariz. R. Sup.Ct. 53(d), Notes to 1996 Amendments. The Commission did not conclude that any findings of the hearing committee were clearly erroneous, but instead embraced them all. Moreover, this was not a case in which the Commission had original jurisdiction. Under these circumstances, it was powerless to supplement or modify the findings of the hearing committee.
¶ 10 One of the factual determinations expressly adopted by the Commission was that the respondent did not purposefully engage in unethical conduct. In other words, her behavior may have been negligent, but not willful. Despite this, the Commission held Tocco responsible because it believed she should have known that her behavior was unethical. Based on the hearing committee's findings, however, the respondent could not have violated Ethical Rules 1.2, 3.3, and 4.1, since each of them requires knowing misconduct. See Ariz. R. Sup.Ct. 42.
¶ 11 ER 1.2(d) prohibits an attorney from counseling or assisting a client in behavior which the lawyer knows is criminal or fraudulent. Rules 3.3 and 4.1 define conduct *543 in which a lawyer shall not knowingly take part. The Preamble to the Rules of Professional Conduct explains that "knowingly" and "knows" denote "actual knowledge of the fact in question," which "may be inferred from circumstances." Ariz. R. Sup.Ct. 42, preamble (emphasis added). While actual knowledge can be proven by circumstantial evidence, a mere showing that the attorney reasonably should have known her conduct was in violation of the rules, without more, is insufficient.[3] As stated above, the Commission adopted the hearing committee's finding that Tocco was, at worst, negligent. Thus, there could be no determination that she violated Ethical Rules 1.2, 3.3, and 4.1.
¶ 12 Equally fatal was the Commission's failure to provide advance notice to the respondent of certain infractions that she was ultimately found to have committed. A majority of the Commission held that Tocco violated ER 3.3 "when she failed to amend the bankruptcy schedules even after she knew, or came to know, that they contained false information." Its conclusion with respect to ER 4.1 was similar:
Ms. Tocco made a false statement of material fact when she failed to amend the schedules which she knew contained false information, and continued to assert to the Hearing Committee in this matter that she had performed research and that there was authority that these transactions were in the ordinary course of business.
¶ 13 In a Joint Pretrial Statement filed with the hearing committee, neither the state bar nor the respondent identified as an issue her alleged failure to amend the bankruptcy schedules after errors were noted. Likewise, at no time did the state bar assert that the respondent made false claims relating to her research or supporting legal authority.
¶ 14 Because disciplinary proceedings are quasi-criminal, an attorney must be alerted in advance to the charges against her. See In re Ruffalo, 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968). The state bar admits in its brief that the Commission found Tocco guilty of ethical violations, the underlying facts of which had not been specifically charged. It claims, however, that because she had been accused of deliberately omitting certain assets or transfers from the bankruptcy schedules, the Commission was empowered to find her guilty of any charges relating to those schedules. We have held that a lawyer can be convicted of an uncharged ethical violation if it is not based on separate incidents of misconduct. In re Swartz, 129 Ariz. 288, 293, 630 P.2d 1020, 1025 (1981). Here, however, the respondent was on notice only with respect to issues concerning her initial omissions. The Commission specifically found an ethical breach based on her subsequent failure to amend the schedules, a distinctly different circumstance. Tocco was never advised of this charge and spent only a brief period of time explaining these facts to the hearing committee. Moreover, the state bar did not allege Tocco's failure to amend in pressing its case against her. The Commission independently found this violation, apparently relying on the expertise of one or more of its own members. We believe such a procedure was improper and reverse the finding that Tocco violated ER 3.3.
¶ 15 If certain conduct has been specified in the complaint, the determination of a separate violation arising out of that conduct is "similar to the finding of a lesser included offense upon an indictment or information in criminal law." Swartz, 129 Ariz. at 293, 630 P.2d at 1025. New charges, however, cannot be brought "as to separate incidents of misconduct on the basis of testimony which had been presented in bar disciplinary proceedings in response to original charges of misconduct." Id. The Commission's conclusion that Tocco violated Ethical Rule 4.1 was based entirely on her assertions to the hearing committee that she had performed research and found legal authority for her position. She made these claims in response to the state bar's charges against her. However, the bar did not amend its complaint, and the Commission did not alert the respondent *544 to its interest in this behavior. It even ignored a request by Tocco's attorney to file a supplemental memorandum addressing any additional concerns the Commission may have had. It thus appears that the Commission erred in finding her guilty of this charge without advance notice or opportunity to defend herself. Therefore, we reverse its determination as to Ethical Rule 4.1.
¶ 16 Finally, the Commission concluded that Tocco violated ER 1.7 by engaging "in a conflict of interest when she continued to represent both the Jonoviches and OMA after determining that a conflict existed by virtue of the transfer of stock and the lock-out." This conclusion contradicts a specific finding by the hearing committee that "there is no evidence that supports [the bar's] claim" of a violation of ER 1.7.
¶ 17 Against assertions to the contrary, the hearing committee found that Tocco was forthright in her testimony, while disbelieving the bar's primary witness. See supra n. 2. It also concluded that the 33-page brief submitted by the state bar did not accurately reflect the essence of what it had heard and seen at the hearing. While she admittedly did some work on behalf of OMA after withdrawing as its attorney, Tocco explained that her actions were intended to secure the rights of the clients and to ensure an orderly transfer of responsibilities to new counsel. Ethical Rule 1.16(d) outlines a lawyer's obligations upon termination of representation. We find no violation of this rule in the record.
¶ 18 Respondent also did some work relating to OMA on behalf of the Jonoviches. She did this work based on her belief that the Jonoviches had a continuing interest in OMA. The committee heard extensive testimony regarding this behavior and found that no violation occurred. We cannot disagree.

III. DISPOSITION
¶ 19 We adopt the hearing committee's findings and recommendations in full. The charges against Ms. Tocco are dismissed.
CONCURRING: CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice, FREDERICK J. MARTONE, Justice, and RUTH V. MCGREGOR, Justice.
NOTES
[1] The dissenters favored either a remand to the hearing committee for additional findings of fact, or an affirmance of the hearing committee's decision "based on the Bar's failure to sustain its burden of proof." They deemed inappropriate the majority's use of "its own specialized knowledge of bankruptcy law to decide the case, which not only helped the Bar overcome its deficiencies in how it presented the case, but deprived the respondent from responding to the specific findings of fact and law made by the Commission."
[2] The committee specifically found that the testimony of Ivan Jonovich regarding this allegation and others was "wholly unbelievable."
[3] Holding otherwise would support an allegation in every case that, because lawyers are expected to be familiar with the Rules of Professional Conduct, they "should have known" of their infractions, thereby effectively reducing the actual knowledge requirement to a nullity.