SUPREME COURT OF ARIZONA
En Banc

In the Matter of a Non-Member of  ) Arizona Supreme Court
the State Bar of Arizona,          ) No.  SB-06-0121-D
                                   )
CARLY VAN DOX,                     ) Disciplinary Commission
                                   ) No.  04-1846
                   Respondent. )
_____ )  **O P I N I O N**

Review from the Disciplinary Commission
No.  04-1846 (Filed April 12, 2006)

**VACATED IN PART; DISCIPLINE IMPOSED**
_____

OSBORN MALEDON, P.A.                                      Phoenix
     By   Mark I. Harrison
          Sara S. Greene

And

CLINT BOLICK                                             Phoenix
     By   Clint Bolick
Attorneys for Carly Van Dox

STATE BAR OF ARIZONA                                     Phoenix
     By   Robert B. Van Wyck, Chief Bar Counsel
          Denise K. Tomaiko, Staff Bar Counsel
Attorneys for State Bar of Arizona
_____

**B E R C H**, Vice Chief Justice

¶1     We granted review in this disciplinary case to clarify the standard the Disciplinary Commission must apply when reviewing a hearing officer's findings of fact and the definition of "knowledge," as that term is used in the *American Bar Association Standards for Imposing Lawyer Sanctions*.

Because the Commission failed to properly defer to the Hearing Officer's factual findings and misinterpreted the term "knowledge" in determining the appropriate sanction, we decline to impose the Commission's recommended sanction of censure and instead impose a sanction of informal reprimand.

## I.  FACTS AND PROCEDURAL BACKGROUND

¶2      Respondent Carly Van Dox is a lawyer who has been admitted to practice law in both Virginia and Florida.  She is also certified in Florida as a mediator.  Since moving to Arizona in 1997, she has worked as a licensed realtor, but has not applied for admission to the Arizona Bar.

¶3      In 2004, a co-worker asked Van Dox to represent the sellers in a real estate transaction in a private mediation. Van Dox explained to the sellers that she was not licensed to practice law in Arizona and so could not represent them if the dispute did not settle during the mediation.  Following the disclosure, the sellers signed a retainer form that Van Dox had used in her Florida law practice and agreed to pay her $1,000 for her services in the mediation.

¶4      During the mediation, the buyers' attorney discovered that Van Dox was not licensed to practice law in Arizona and informed the mediator of this fact.  When the mediator questioned Van Dox, she readily acknowledged that she was licensed in Florida, but not Arizona.

¶5     The mediator then called an Arizona attorney who was versed in unauthorized practice of law issues.  After talking to that attorney and conducting independent research, the mediator concluded that Van Dox could ethically proceed with the mediation.  The buyers' attorney also agreed to proceed.  The mediation ended without resolving the dispute.

¶6     Van Dox believed that her participation in the mediation was proper because the mediation was not court ordered and, in Florida, a certified mediator need not be an attorney. After the mediation, she discussed the issue with a retired superior court commissioner who advised Van Dox that she could rely on the mediator's determination.

¶7     Although the mediation did not resolve the dispute, the sellers were satisfied with Van Dox's work and neither requested return of the $1,000 fee nor filed a complaint against her.  The buyers, however, filed a complaint with the Arizona State Bar.  After Van Dox failed to respond to two inquiries from the State Bar regarding the matter, the Bar filed a formal complaint charging her with engaging in the unauthorized practice of law, in violation of Arizona Supreme Court Rule 31 and Ethical Rule ("ER") 5.5 of the Arizona Rules of Professional Conduct; conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of ER 8.4(c); and conduct prejudicial to the administration of justice, in violation of ER

8.4(d).  She was also charged with violating Supreme Court Rule 53 by failing to cooperate with the Bar and respond promptly to the Bar's inquiries.  *See* Ariz. R. Sup. Ct. 53(d) (refusal to cooperate); *id.* 53(f) (failure to respond promptly).

¶8      A hearing on the charges was held before a State Bar Hearing Officer who concluded that Van Dox violated ER 5.5 and Supreme Court Rule 31 by engaging in the unauthorized practice of law, and Supreme Court Rule 53(f) by failing to promptly respond to the Bar's inquiries.[1]  He recommended diversion as a sanction because he found that Van Dox's actions were negligent, caused little or no injury, and were not motivated by dishonesty or selfishness.  The State Bar appealed to the Disciplinary Commission, which reversed several of the Hearing Officer's findings and conclusions.  First, the Commission determined that Van Dox had knowingly rather than negligently engaged in the unauthorized practice of law.  Second, the Commission found that Van Dox's conduct was motivated by dishonesty or selfishness because she accepted compensation for her work.  Finally, the Commission found that her conduct caused actual or potential injury.  The Commission recommended censure, rather than

---

[1]     Both the Hearing Officer's Report, *In re Van Dox*, No. 04-1846 (Nov. 2, 2005), and the Disciplinary Commission's Report, *In re Van Dox*, No. 04-1846 (Apr. 12, 2006), are available at http://www.supreme.state.az.us/dc/matrix.htm.

diversion, as the appropriate sanction.

¶9      Van Dox petitioned this Court for review of the Commission's recommended sanction, which we granted.[2]  We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and Arizona Supreme Court Rule 59(a).

## II.  DISCUSSION

¶10      Attorney discipline is designed to protect the public, the legal profession, and the legal system and to deter other attorneys from engaging in unprofessional conduct.  *In re Scholl*, 200 Ariz. 222, 227, ¶ 29, 25 P.3d 710, 715 (2001) (citing *In re Neville*, 147 Ariz. 106, 116, 708 P.2d 1297, 1307 (1985), and *In re Swartz*, 141 Ariz. 266, 277, 686 P.2d 1236, 1247 (1984)).  Attorney discipline is not intended to punish the offending attorney, although the sanctions imposed may have that incidental effect.  *Id.* at 224, ¶ 8, 25 P.3d at 712 (citing *In re Pappas*, 159 Ariz. 516, 526, 768 P.2d 1161, 1171 (1988)).

## A.   ABA Standards

¶11      Van Dox does not challenge the conclusion that she engaged in the unauthorized practice of law and failed to respond to State Bar inquiries.  Thus, the only issue before us

---

[2]      We originally also granted review on the issue of this Court's jurisdiction over a lawyer who is not a member of the Arizona Bar and engages in the unauthorized practice of law.  We now conclude that review of that question was improvidently granted and therefore vacate review on that issue.

is the appropriate sanction. In determining the sanctions for ethical violations, we are guided by the *American Bar Association Standards for Imposing Lawyer Discipline* (1992) ("*ABA Standards*"). *In re Peasley*, 208 Ariz. 27, 33, ¶ 23, 90 P.3d 764, 770 (2004). We consider the following factors relevant in determining appropriate discipline: (1) the duty violated, (2) the lawyer's mental state, (3) the potential or actual injury caused by the lawyer's conduct, and (4) the existence of aggravating or mitigating factors. Standard 3.0; *Peasley*, 208 Ariz. at 32, ¶ 19, 90 P.3d at 769. We address each factor in turn.

### 1. Duty violated

**¶12** The Hearing Officer and the Commission both found that Van Dox engaged in the unauthorized practice of law, in violation of ER 5.5 and Supreme Court Rule 31, and that she failed to respond promptly to State Bar inquiries, in violation of Supreme Court Rule 53(f). Standard 7.0 provides that such conduct violates a duty owed to the profession, although it may violate duties owed to clients, the public, or the legal system as well.

### 2. Mental state

**¶13** A lawyer's mental state affects the sanction for ethical violations. Intentional or knowing conduct threatens more harm to the public, the legal system, and the profession

than does negligent conduct, and is accordingly sanctioned more severely. *See ABA Standards* at 9-10. *Compare Peasley*, 208 Ariz. at 41-42, ¶ 65, 90 P.3d at 778-79 (holding that any sanction less than disbarment would be inappropriate based on respondent's intentional ethical violations), *with In re Bemis*, 189 Ariz. 119, 122-23, 938 P.2d 1120, 1123-24 (1997) (censuring respondent for negligent professional misconduct); *compare also* Standard 7.2 (stating that suspension is the presumed sanction for knowing violations of ethical rules), *with* Standard 7.4 (stating that an admonition is the presumed sanction for isolated instance of negligent violation of ethical rules). The Hearing Officer found that Van Dox's conduct in engaging in the unauthorized practice of law was merely negligent. The Commission disagreed, concluding that Van Dox's conduct was knowing rather than negligent. In so concluding, the Commission relied on two facts: Van Dox had the sellers sign the standard retainer agreement she had used in her Florida law practice, which contained the designation "Law Offices of Carly R. Van Dox, P.A.," and she signed the "Mediation Agreement Rules and Procedures" form provided by the mediator as "Carly Van Dox, Atty." These acts, the Commission found, showed Van Dox's awareness that she was engaging in the unauthorized practice of law.

¶14      State of mind is a fact question. *In re Clark*, 207

Ariz. 414, 417, ¶ 14, 87 P.3d 827, 830 (2004). The Hearing Officer, after observing Van Dox and hearing her testimony, found that she acted negligently. In disciplinary proceedings, the Commission must defer to a hearing officer's factual findings and "may not reject the hearing officer's findings of fact related to discipline unless it determines that the factual findings are clearly erroneous." *Id.* at 418, ¶ 18, 87 P.3d at 831; *see* Ariz. R. Sup. Ct. 58(b).

¶15    The "clear error" standard requires that the Commission give "great deference" to a hearing officer's factual findings. *See Scholl*, 200 Ariz. at 226, ¶ 25, 25 P.3d at 714. This means that, in resolving factual questions, the Commission may not simply substitute its judgment for that of a hearing officer. *See United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 286, 681 P.2d 390, 438 (App. 1983) (reviewing court "will not substitute its judgment as to credibility of witnesses or weight of evidence for that of the [factfinder]"). To be clearly erroneous, a finding must be unsupported by any reasonable evidence. *Moreno v. Jones*, 213 Ariz. 94, 98, ¶ 20, 139 P.3d 612, 616 (2006) (citing *O'Hern v. Bowling*, 109 Ariz. 90, 92-93, 505 P.2d 550, 552-53 (1973)).[3] Deference to a hearing

---

[3]    One court explained that, "[t]o be clearly erroneous, a decision must [be] more than just maybe or probably wrong; it must . . . strike [the reviewing body] as wrong with the force

officer's factual findings is appropriate because, having had the opportunity to observe and hear the witnesses, the hearing officer is in a superior position to assess them and judge their credibility. *See In re Piatt*, 191 Ariz. 24, 27, 951 P.2d 889, 892 (1997).

**¶16** Like the Commission, we also review a hearing officer's factual findings for clear error. Ariz. R. Sup. Ct. 59(b); *In re Alcorn*, 202 Ariz. 62, 64 n.4, 41 P.3d 600, 602 n.4 (2002). We must therefore determine whether the Hearing Officer clearly erred in finding that Van Dox negligently engaged in the unauthorized practice of law.

**¶17** "Negligence" occurs when a lawyer fails "to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *ABA Standards* at 12. The evidence adduced at the hearing showed that Van Dox believed that the private mediation in which she participated did not involve the unauthorized practice of law because it was not court ordered. Moreover, Florida, the state from which she had come, certifies mediators who are not

---

of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). Although the Arizona courts' explanations are less vivid, they adequately express the correct legal standard.

attorneys. Thus, she reasoned, non-lawyers may participate in private mediations. She advised her clients at their first meeting that she was not licensed as an attorney in Arizona. She further advised them that if the matter progressed beyond mediation, she would not be able to assist them. She signed in at the mediation as "Carly Van Dox, Atty." because she is in fact an attorney.

¶18    Although Van Dox erred in thinking that her actions did not constitute the unauthorized practice of law in Arizona, the Hearing Officer found that her belief was honest and that she negligently practiced law without authorization when she agreed to participate in the mediation. Her belief was supported by the mediator's consultation with an attorney. The mediator concluded that the mediation could ethically proceed with Van Dox's participation, a result confirmed to Van Dox by a former superior court commissioner. Although these sources were consulted after Van Dox began her participation in the mediation, they demonstrate that her confusion on the issue was not unreasonable.

¶19    These facts amply support the Hearing Officer's finding that Van Dox's conduct in engaging in the unauthorized practice of law was not knowing, but negligent. *See id.* Because substantial evidence supports the Hearing Officer's finding, we defer to it. *See Merryweather v. Pendleton*, 91

Ariz. 334, 338, 372 P.2d 335, 338 (1962).

¶20     In support of the Commission's finding of a "knowing" violation, the State Bar argues that all that is required to constitute a "knowing" violation is that the respondent was aware that she performed actions, and the actions in fact constituted the unauthorized practice of law; she need not have been aware when she acted that she was engaging in the unauthorized practice of law.  Therefore, the Bar argues, Van Dox's conduct was knowing rather than negligent because she knew that she provided a retainer agreement from her Florida practice and that she signed in as an attorney representing the sellers at the mediation.

¶21     The applicable definition of "knowledge," however, refutes the Bar's argument.  The *ABA Standards* define "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct."  *ABA Standards* at 12. This definition clarifies that merely knowing one performs particular actions is not the same as consciously intending by those actions to engage in unethical conduct.  The actor must also know the nature and circumstances of those actions; that is, a respondent knowingly engages in the unauthorized practice of law only if she is aware that her conduct constitutes the unauthorized practice of law.  *See In re Taylor*, 180 Ariz. 290, 292, 883 P.2d 1046, 1048 (1994)  (concluding that respondent who

admittedly "knew that he should not be practicing [law] during [a period of suspension]" knowingly engaged in the unauthorized practice of law); *see also In re Tocco*, 194 Ariz. 453, 457, ¶ 11, 984 P.2d 539, 543 (1999) (holding that "a mere showing that the attorney reasonably *should have known* her conduct was in violation of the rules, without more, is insufficient" to establish a knowing ethical violation); *In re Levine*, 174 Ariz. 146, 171, 847 P.2d 1093, 1118 (1993) (indicating that the knowledge required for setting a higher sanction for professional misconduct is "knowledge that [respondent] may have been violating an ethical rule").

¶22     In this case, the Hearing Officer found that Van Dox did not know that her actions constituted the unauthorized practice of law.  He concluded that an honest but erroneous belief that one's actions do not constitute the unauthorized practice of law does not constitute a knowing violation.

¶23     We agree with the Hearing Officer's legal determination.  Adopting the State Bar's definition of "knowledge" would have the effect of rendering any act of unauthorized practice a "knowing" violation of the ethical rules, unless the respondent acted while asleep or unconscious. Such an interpretation would negate mental state as a factor in determining suitable sanctions for unauthorized practice of law violations, in contravention of this Court's established

practice. *See Peasley*, 208 Ariz. at 32, ¶ 19, 90 P.3d at 769; *Tocco*, 194 Ariz. at 457 n.3, 984 P.2d at 543 n.3.

**¶24** Applying the proper definition of "knowledge" and deferring to the Hearing Officer's findings of fact, we conclude that Van Dox's conduct was negligent.

### 3. Actual or potential injury

**¶25** The Court also considers the harm caused by ethical violations in determining sanctions. The Hearing Officer found that Van Dox's conduct caused little or no injury. The Commission disagreed. Whether a lawyer's actions caused harm is a question of fact. *See Reed v. Mitchell & Timbanard, P.C.*, 183 Ariz. 313, 318, 903 P.2d 621, 626 (App. 1995). Thus, we and the Commission must defer to the Hearing Officer's finding that Van Dox's actions caused little or no injury unless that finding is clearly erroneous.

**¶26** The *ABA Standards* define "injury" as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." *ABA Standards* at 12. "[A] reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." *Id.* The comment to Standard 7.0 notes that violations of duties owed to the profession, such as are present in this case, are "generally . . . less likely to cause injury to a client, the public, or the administration of justice."

**¶27** The Hearing Officer found that the sellers were satisfied with Van Dox's representation and concluded that they suffered little or no injury from it, a conclusion the Commission does not challenge. The Commission decided, however, that the Hearing Officer failed to consider any possible injury to the public, the legal system, or the profession. We do not agree. After considering the harm to the sellers, the Hearing Officer addressed the lack of injury to the buyers and concluded that they too suffered little or no injury from Van Dox's conduct.[4] The Hearing Officer also noted that all involved, other than the buyers, agreed that the mediation would not have ended differently if Van Dox had been an Arizona attorney. The Hearing Officer indirectly touched upon the lack of injury to the public, the legal system, and the profession when he concluded that "neither the public nor other lawyers will benefit from whatever lessons might be gleaned from Respondent's conduct in representing the [sellers] in a private mediation."

**¶28** On review of the evidence, we conclude that the Hearing Officer's finding that Van Dox's conduct caused little or no injury was supported by substantial evidence and was not clearly erroneous. The Commission therefore erred in not

---

[4]    Six months after buying the house that was the subject of the mediation, the buyers sold it at a substantial profit.

deferring to the Hearing Officer's finding.

¶29    Before this Court, the State Bar raises the additional arguments that Van Dox's conduct could have injured the sellers by depriving them of the benefit of the attorney-client privilege and a potential legal malpractice action had Van Dox's representation not been adequate.   Because the Bar failed to raise these claims below, we decline to address them.   *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977) (declining to address issues raised for first time on appeal).

    4.   Presumptive sanction

¶30    An informal reprimand "is generally [the] appropriate [sanction] when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system."   Standard 7.4 (defining admonition, the equivalent of Arizona's informal reprimand). Having concluded that Van Dox negligently engaged in the unauthorized practice of law, a violation of a duty owed as a professional, and deferring to the Hearing Officer's finding that her act constituted an isolated instance of misconduct,[5] the

---

[5]    On this point, the Hearing Officer compared Van Dox's conduct to that of the respondent in *In re Winiarski*, No. 98-2052 (Disciplinary Comm'n May 15, 2000), discussed *infra* ¶¶ 40-41, whose conduct in twice appearing before an administrative tribunal was deemed an "isolated instance."

presumptive sanction is an informal reprimand.

**¶31**      The presence of aggravating or mitigating factors may, however, overcome the presumption. *See Peasley*, 208 Ariz. at 36, ¶ 36, 90 P.3d at 773. We examine those factors next.

   5.    Aggravating and mitigating factors

**¶32**      Standards 9.2 and 9.3 enumerate potential aggravating and mitigating factors to be considered in determining the appropriate sanction for professional misconduct. The Hearing Officer found no aggravating factors, but found the existence of five mitigating factors: (1) the absence of a prior disciplinary record, Standard 9.32(a); (2) the absence of a dishonest or selfish motive, Standard 9.32(b); (3) a cooperative attitude toward the proceedings following her initial failure to respond, Standard 9.32(e); (4) good character or reputation, Standard 9.32(g); and (5) exhibition of remorse, Standard 9.32(m). The Commission agreed that four of the five mitigating factors were established, but found the evidence insufficient to support the mitigating factor of "absence of a dishonest or selfish motive." The Commission instead concluded that Van Dox had a "dishonest or selfish motive" because she accepted a fee of $1,000 for her services.

**¶33**      The presence or absence of a dishonest or selfish motive is a fact question. *See Clark*, 207 Ariz. at 418, ¶ 18, 87 P.3d at 831. The Commission may not make additional findings

- 16 -

of fact in a disciplinary proceeding, *Tocco*, 194 Ariz. at 456, ¶ 9, 984 P.2d at 542, or deviate from those found by a hearing officer unless they are clearly erroneous, Ariz. R. Sup. Ct. 58(b). We therefore must determine whether the Hearing Officer's finding that Van Dox lacked a dishonest or selfish motive was clearly erroneous.

¶34    The Commission appears to have based its finding that Van Dox had a dishonest or selfish motive solely on the fact that she accepted payment for her services. Standing alone, however, the receipt of a fee does not mandate a finding of a dishonest or selfish motive. *See In re Castro*, 164 Ariz. 428, 434, 793 P.2d 1095, 1101 (1990).

¶35    The cases in which we have found a dishonest or selfish motive have involved intentional or knowing ethical violations. In *In re Shannon*, for example, to protect his own interests, an attorney represented a client and another, despite an obvious conflict in the parties' interests. 179 Ariz. 52, 69, 876 P.2d 548, 565 (1994); *see also In re Spear*, 160 Ariz. 545, 555-56, 774 P.2d 1335, 1345-46 (1989) (finding a dishonest or selfish motive because respondent "intentional[ly] abuse[d] . . . the lawyer-client relationship" by inducing client to purchase property to lawyer's advantage and client's disadvantage). In *In re Arrick*, we found that the respondent possessed a dishonest or selfish motive, in part, because he

- 17 -

made "deliberate misrepresentations . . . designed to cover his negligence." 180 Ariz. 136, 143, 882 P.2d 943, 950 (1994); *see also In re Hansen*, 179 Ariz. 229, 232, 877 P.2d 802, 805 (1994) (finding a dishonest or selfish motive because respondent "lied to the court to cover up her error"). We have also found a dishonest or selfish motive in cases involving conversion of client funds for an attorney's own use and knowingly filing frivolous lawsuits. *See, e.g.*, *Levine*, 174 Ariz. at 171, 847 P.2d at 1118 (filing frivolous lawsuits); *In re Jones*, 169 Ariz. 19, 19, 21, 816 P.2d 916, 916, 918 (1991) (converting client funds); *In re Henry*, 168 Ariz. 141, 144, 811 P.2d 1078, 1081 (1991) (same). In no case have we found a dishonest or selfish motive solely from the receipt of reasonable compensation.

¶36    As we have already concluded, Van Dox's conduct was negligent rather than intentional or knowing. In the absence of other facts to indicate a dishonest or selfish motive on Van Dox's part, we cannot conclude that the Hearing Officer clearly erred in finding that Van Dox lacked such a motive.

¶37    We agree with the Hearing Officer's finding that five mitigating factors are present: (1) the absence of a disciplinary record, (2) the absence of a dishonest or selfish motive, (3) Van Dox's ultimate cooperation in the proceedings, (4) her character or reputation, and (5) her remorse. We further agree that no aggravating factors were proved.

¶38     We do agree with the Commission, however, that the Hearing Officer improperly considered the potential effects of discipline on Van Dox's livelihood and reciprocal discipline in Florida and Virginia in determining the sanction.  The effects of sanctions on an attorney's practice and livelihood are not mitigating factors that may be considered in determining sanctions.  *Shannon*, 179 Ariz. at 71, 876 P.2d at 567.

**B.    Proportionality**

¶39     When sanctioning lawyers, in addition to the guidance provided by the *ABA Standards*, "we look to other, similar cases in determining whether the sanction imposed is proportionate to the misconduct charged."  *Alcorn*, 202 Ariz. at 76, ¶ 49, 41 P.3d at 614.    In this case, the Hearing Officer found *In re Winiarski*, No. 98-2052 (Disciplinary Comm'n May 15, 2000), to be most similar to this case.

¶40     Winiarski, who was licensed in Maine but not Arizona, twice appeared on behalf of a construction company at administrative hearings.  *Id.* at 2-3 (Hr'g Officer's Rpt. Dec. 2, 1999).  Winiarski had been told before the hearings that he did not need to be an attorney to participate.  *Id.* at 3.  Winiarksi failed to inform the tribunal that he was not licensed in Arizona and signed in as an attorney at the second hearing.  *Id.*  At both hearings, the tribunal believed that Winiarski was licensed to practice law in Arizona.  *Id.*  Winiarski was charged

with the unauthorized practice of law. *Id.* at 1. The Commission concluded that Winiarski's conduct was negligent and caused no actual or potential injury and adopted the Hearing Officer's finding that the conduct constituted an isolated instance of misconduct. *Id.* at 2-3 (Disciplinary Comm'n May 15, 2000). Four mitigating and no aggravating factors were found. *Id.* at 2. Applying Standard 7.4, a sanction of informal reprimand was imposed. *Id.* at 3-4.

¶41    Here, as in *Winiarski*, a non-member of the Arizona bar negligently participated in a proceeding believing that she did not need to be an attorney to participate. Little or no actual or potential harm resulted from the conduct, which constituted an isolated instance of the unauthorized practice of law.

¶42    The Commission distinguished *Winiarski* on the grounds that Van Dox, unlike Winiarski, failed to respond promptly to Bar inquiries in addition to engaging in the unauthorized practice of law. Such a failure is serious. *See In re Espino*, 168 Ariz. 139, 141, 811 P.2d 1076, 1078 (1991). We agree with the Hearing Officer's conclusion, however, that "[t]he State Bar has failed to prove by clear and convincing evidence that Respondent's failure to respond to the State Bar's letter[s] was

in bad faith or meant to obstruct the disciplinary process."[6] Consequently, we find that this factor does not justify a more severe sanction. *Cf.* Standard 9.22(e) (listing "bad faith obstruction of the disciplinary proceeding" as an aggravating factor). Moreover, an additional mitigating factor was found to exist in Van Dox's case that did not exist in Winiarski's case. The Commission's recommended sanction of censure of Van Dox is therefore not proportionate to her misconduct.

## C. Appropriate Sanction

¶43 Determining the appropriate sanction for an ethical violation is a question of law that we review de novo. *See In re Walker*, 200 Ariz. 155, 160, ¶ 20, 24 P.3d 602, 607 (2001). Although we consider the recommendation of the Hearing Officer and the Commission, "the responsibility to decide upon the appropriate sanction in a disciplinary proceeding is ultimately ours." *Peasley*, 208 Ariz. at 33, ¶ 23, 90 P.3d at 770 (quoting

---

[6] Although failure to respond need not be done in bad faith or to obstruct the disciplinary process to constitute an ethical violation, *see* Ariz. R. Sup. Ct. 53(f), a lawyer's reason for the failure may bear on the appropriate sanction for the violation. Van Dox testified that her failure to respond to the Bar's inquiries was initially attributable to diminished memory, lapses in concentration, and inattention to detail resulting from a stroke she suffered in 2002, and later to her belief that the complaint would be dropped. The Hearing Officer found Van Dox a "compelling witness" and found her explanation "[r]elevant to her failure to respond." He thus gave less weight to her failure to respond. Since receiving the formal complaint from the Bar, Van Dox has fully cooperated with all proceedings.

*Walker*, 200 Ariz. at 160, ¶ 20, 24 P.3d at 607). Considering the *ABA Standards* and our proportionality analysis, we conclude that Standard 7.4 applies here and impose an informal reprimand for Van Dox's ethical violations.

**¶44** Van Dox urges this Court to find diversion an appropriate alternative to discipline in this case. The State Bar counters that diversion is not available to a non-member of the Arizona Bar. *See* Ariz. R. Sup. Ct. 46(f)(15) (defining "non-member"). We do not reach the question whether diversion is available to non-members because we hold that, in any event, diversion is not appropriate here.

**¶45** The State Bar may recommend diversion in certain cases in accordance with the State Bar of Arizona *Diversion Guidelines*. Ariz. R. Sup. Ct. 55(b). The *Diversion Guidelines* provide: "The purpose of the Diversion Program is to protect the public by improving the professional competency of and providing educational, remedial and rehabilitative programs to members of the State Bar of Arizona . . . ." *Guidelines/ Regulations for Implementation of the Diversion Program* at 1 (2004), *available at* http://www.myazbar.org/LawyerRegulation/ DiversionGuidelines2004.pdf. A sub-goal is to prevent similar future violations by the respondent. *Id.* The *Guidelines* note that diversion is not available in cases that "present little hope that diversion will achieve program goals." *Id.*

¶46　　　　Given the purpose of the diversion program to educate attorneys, improve competency, and prevent future violations, even if diversion were theoretically available to a non-member, it is not appropriate in this case. It makes little sense to allow diversion for a non-member who has engaged in a single instance of unauthorized practice of law and is not likely to re-offend. Indeed, the Hearing Officer acknowledged that "Respondent's violations were the result of negligence relating to a legal issue about which Respondent is now knowledgeable. There is no risk Respondent will make the same mistake twice."

¶47　　　　Moreover, this case involves not only the unauthorized practice of law, but also failure to respond to two inquiries from the State Bar regarding the matter. Although Van Dox's failure to respond was not intended to hinder the disciplinary process, it nonetheless constitutes a violation of this Court's Rules and persuades us that discipline is appropriate in this case. We thus conclude that an informal reprimand is the appropriate sanction.

## III.  CONCLUSION

¶48　　　　For the foregoing reasons, we vacate the Commission's factual findings and recommendation related to sanction and impose on Respondent Van Dox a sanction of informal reprimand

for her violations of ER 5.5 and Arizona Supreme Court Rules 31 and 53(f).

_____
Rebecca White Berch, Vice Chief Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
Lawrence F. Winthrop, Judge*


*Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Lawrence F. Winthrop, Judge of the Arizona Court of Appeals, Division One, was designated to sit in this matter.