IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

IN THE MATTER OF A MEMBER
OF THE STATE BAR OF ARIZONA

**MICHAEL E. ISLER**
**ATTORNEY NO. 20847**

No. SB 13-0026-AP
Filed March 4, 2014

Appeal of Hearing Panel Report and Order Imposing Sanctions from the
Office of the Presiding Disciplinary Judge
No. PDJ20129083

**SUSPENSION ORDERED**

COUNSEL:

Ralph W. Adams, Karen A. Clark, Adams & Clark, PC, Phoenix, for
Respondent

Craig D. Henley, State Bar of Arizona, Phoenix, for State Bar of Arizona

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF
JUSTICE BERCH, VICE CHIEF JUSTICE BALES, JUSTICE PELANDER,
and JUSTICE BRUTINEL joined.

JUSTICE TIMMER, opinion of the Court:

¶1        Michael E. Isler appeals from a disciplinary panel's report
and order disbarring him. Although the record supports the panel's
determination that Isler violated several Arizona Rules of Professional
Conduct ("ERs"), the panel's findings concerning other ERs are
unsupported. Accordingly, and in light of substantial mitigation Isler
presented, we reduce his sanction to a two-year suspension from the
practice of law.

## BACKGROUND

¶2  In August 2012, the State Bar filed an eight-count disciplinary complaint against Isler, alleging professional misconduct concerning his representation of seven clients during 2010–2012. Following a three-day hearing, a disciplinary panel found that he had violated several ERs, as set forth in Arizona Supreme Court Rule 42, and ordered Isler disbarred. He timely appealed, and we have jurisdiction pursuant to Article 3 and Article 6, Sections 1, 5(3), and 5(4) of the Arizona Constitution and Arizona Supreme Court Rule 59(a).

## DISCUSSION

### I.  Factual Findings

¶3  The State Bar must prove its allegations by clear and convincing evidence. Ariz. R. Sup. Ct. 58(j)(3). We accept the panel's factual findings unless they are clearly erroneous. *In re Aubuchon*, 233 Ariz. 62, 67 ¶ 21, 309 P.3d 886, 891 (2013). Findings are clearly erroneous if they are not supported by reasonable evidence. *In re Van Dox*, 214 Ariz. 300, 304 ¶ 15, 152 P.3d 1183, 1187 (2007).

### A.  Counts One and Four

¶4  Client M.B. retained Isler to represent her in post-decree modification proceedings. Shortly thereafter, M.B. asked Isler how to obtain an order of protection against her ex-husband. Isler advised that she could petition any court for relief, and she thereafter obtained a protective order in justice court. Her ex-husband allegedly violated the order, and the state brought a criminal charge against him. On the ex-husband's motion in the family court matter, the superior court dismissed the protective order *ab initio* as "jurisdictionally invalid" pursuant to former A.R.S. § 13-3602(O) (now § 13-3602(P)).

¶5  The hearing panel found that Isler violated ERs 3.1, 4.4, and 8.4(d) by advising M.B. she could obtain a protective order from the

justice court and by failing to attend the hearing on the ex-husband's motion.[1]  These findings are clearly erroneous.

¶6        ER 3.1 prohibits a lawyer from bringing or defending a non-meritorious proceeding, and ER 4.4 prohibits a lawyer from using means that "have no substantial purpose other than to embarrass, delay, or burden any other person."  Isler, however, neither filed the petition seeking a protective order nor defended against its dismissal.  Moreover, no evidence shows that Isler sought to embarrass, delay, or burden the ex-husband by telling M.B. where she could obtain a protective order.

¶7        ER 8.4(d) prohibits a lawyer from engaging in conduct that is "prejudicial to the administration of justice."  The State Bar argues that Isler prejudiced the administration of justice by advising his client to obtain a protective order in a court that lacked jurisdiction, which resulted in issuance of an invalid order and an eventual criminal charge against J.B.  We disagree.  Although the superior court had "exclusive jurisdiction" over M.B.'s petition in light of the pending family law matter, *see* A.R.S. § 13-3602(P); Ariz. R. Protect. Ord. P. 4(A)(1), the justice court order was valid.  *See* A.R.S. § 13-3602(P) ("No order of protection shall be invalid or determined to be ineffective merely because it was issued by a lower court at a time when an action for maternity or paternity, annulment, legal separation or dissolution of marriage was pending in a higher court.").  Consequently, contrary to the superior court's ruling, Isler's advice to M.B. did not result in issuance of an invalid order.

¶8        Finally, none of the ERs enumerated by the panel applies to Isler's failure to appear at the hearing on the motion to dismiss the protective order.  Although his failure to appear could evidence a lack of diligence in violation of ER 1.3, as charged in the complaint, the panel did not find a violation of this ER, and the State Bar does not challenge this decision.

---

[1]     The panel also cited evidence relating to Isler's conflict of interest in continuing to represent M.B. but did not explain how this continued representation violated the ERs.  Nevertheless, the conflict-of-interest evidence cannot support a finding that Isler committed professional misconduct because the Bar's complaint did not allege that this conduct violated any ERs.

¶9        For all these reasons, we reject the panel's determination that Isler committed professional misconduct by violating ERs 3.1, 4.4, and 8.4(d), as charged in counts one and four.

### B.        Count Two

¶10        Client T.B. retained Isler to represent him in a custody dispute. Their fee agreement capped attorney's fees at $3,500 if the case proceeded to trial. T.B. paid Isler $3,950 in three installments before ultimately terminating the representation before trial. After T.B. initiated fee arbitration, Isler voluntarily refunded $950.

¶11        ER 1.5 prohibits a lawyer from charging or collecting an unreasonable fee. A lawyer may violate ER 1.5 by charging fees that exceed an agreed-upon fee even if those fees might have been deemed reasonable absent the agreement. *See In re Burns*, 139 Ariz. 487, 491, 679 P.2d 510, 514 (1984) (applying the predecessor to ER 1.5). T.B. testified that he made three payments as requested by Isler, for a total of $3,950. This amount exceeds the amount contractually agreed to by $450. Additionally, even though Isler eventually acknowledged the overpayment and agreed to refund it "immediately," he waited approximately five months to do so. Based on this evidence alone, the panel justifiably found that Isler charged and collected an unreasonable fee (that is, $3,950 for work he had agreed to do for a capped fee of $3,500).

¶12        We accept the panel's determination that Isler committed professional misconduct by violating ER 1.5.

### C.        Count Three

¶13        On May 4, 2011, professional counselor F.A. retained Isler to represent her before the Arizona Board of Behavioral Health Examiners (the "Board") regarding a complaint against her professional counseling license. F.A. directed Isler to submit a written acceptance of the Board's invitation to proceed by formal interview rather than formal hearing. Isler did not do so, and the matter proceeded to a formal hearing on May 31.

¶14        At the start of the hearing, Isler moved to continue it, explaining he had expected the matter to proceed as a formal interview, he had only been brought into the case the prior week, and he had not had

4

sufficient time to prepare. As the Board debated the motion, Isler stated he had a prior commitment and left the hearing, leaving F.A. to represent herself. The Board then denied the motion. After a four-hour hearing, the Board placed F.A.'s license on probation.

¶15 The panel found that Isler violated ERs 1.1, 1.2, and 1.3 by failing to take action to obtain a formal interview and by abandoning F.A. at the hearing. It further found that Isler violated ERs 4.1 and 8.4(c) by falsely telling the Board that he had been retained only the week before.

¶16 Isler argues that the panel made clearly erroneous findings about when F.A. retained him and whether she directed him to request a formal interview. F.A.'s testimony, however, supports the panel's findings. We defer to the panel's determination that she was credible. *See State ex rel. La Sota v. Arizona Licensed Beverage Ass'n*, 128 Ariz. 515, 521, 627 P.2d 666, 672 (1981) ("The trial judge has authority to reject the testimony of an interested witness and to determine credibility.").

¶17 Next, Isler contends that the panel clearly erred by finding that he was not required to leave the Board hearing to attend a hearing in Pinal County. We disagree. A review hearing in the Pinal County matter had been scheduled for May 31 after the parties filed a notice of settlement in January stating that a signed stipulation would follow. But a minute entry issued on April 4, 2011, noted that the stipulation had been filed and, therefore, "no further proceedings are necessary; any hearing set is vacated; and, the file is now closed for administrative purposes." That minute entry was sent to Isler. Although the court issued a minute entry on May 31 that again vacated the hearing due to the settlement, in light of the April minute entry, the panel was justified in finding that the court had already vacated the hearing. *See In re Estate of Pousner*, 193 Ariz. 574, 579 ¶ 13, 975 P.2d 704, 709 (1999) ("In reviewing a trial court's findings of fact, we do not reweigh conflicting evidence . . . .").

¶18 We nonetheless agree with Isler that the panel made two clearly erroneous findings. First, the panel incorrectly found that F.A. learned of the Board hearing time from Isler. The record instead reflects that she testified that she learned of the 10 a.m. starting time from a Board letter, and a Board representative had told her to arrive by 9 a.m. Second, the panel erroneously found that "Isler testified he had [F.A.] sign a fee agreement" and then rejected that testimony as "not credible." In fact,

5

Isler testified that although he presented F.A. with a fee agreement, she refused to sign it. These errors are harmless, however, because how F.A. learned of the hearing and whether she signed a fee agreement are immaterial to the identified violations.

¶19 We accept the panel's determination that Isler committed professional misconduct by violating ERs 1.1, 1.2, 1.3, 4.1, and 8.4(c).

### D.    Count Five

¶20 On July 6, 2011, E.L. paid Isler a $1,500 flat fee to draft a special needs trust for her disabled adult daughter, L.L., and to determine whether L.L. could obtain additional child support. The panel found that Isler violated ERs 1.3, 1.4, 1.5(a), 1.5(b), and 1.16 during the representation. Isler argues that the panel made clearly erroneous findings concerning ERs 1.3 and 1.5(a).

¶21 The panel erred by finding that Isler violated ER 1.3 by failing to timely prepare a petition to modify child support on L.L.'s behalf. After meeting with E.L., Isler initially researched the special needs trust matter, which E.L. said was her priority. After concluding he was unqualified to draft the trust, he investigated the child support issue, drafted the petition, and sent it to L.L. for signature on August 29 before ever speaking with her. The record does not reflect any time constraints for filing the petition or that L.L. wanted Isler to proceed on her behalf. Indeed, L.L. did not respond to Isler's request for signature or his mid-September request for direction. In light of this evidence, although Isler could have prepared the petition more promptly, the State Bar did not prove by clear and convincing evidence that he did not act with "reasonable diligence and promptness" in preparing it.

¶22 The record supports the panel's finding that Isler violated ER 1.5(a) by charging an unreasonable fee. The panel accepted E.L.'s testimony that Isler had charged her $1,250 for the special needs trust and $250 for the child support modification petition. Once Isler knew he could not handle the special needs trust, he should have informed his client and refunded the $1,250. Instead, he consumed most of the flat fee on the child support matter, refunding only $412.50 when E.L. terminated his services upon learning he could not prepare the trust.

**¶23** We accept the panel's determination that Isler committed professional misconduct by violating ERs 1.4, 1.5(a), 1.5(b), and 1.16. We reject its determination that Isler violated ER 1.3.

### E. Count Six

**¶24** On June 24, 2010, client M.J. retained Isler for a flat fee of $1,200 to petition the court for grandparent visitation. Five days later, Isler petitioned for visitation but did not request a hearing. Isler served the father but was never able to serve the mother, and the petition languished.

**¶25** On March 22, 2011, M.J. wrote Isler that she wanted to drop the petition and obtain a refund of the unused portion of her fee unless Isler had secured a hearing date. Isler responded by filing a motion for an expedited hearing. M.J. declined to proceed and continued to press for a refund. On July 21, Isler sent M.J. a breakdown of his costs and services on an hourly-rate basis, which showed $1,394.50 incurred. Isler wrote that he "waived" the amount in excess of $1,200 because of the flat fee agreement, and concluded by stating that she owed nothing. After M.J. objected, Isler refunded $400 on August 29.

**¶26** The panel found that Isler violated ERs 1.3, 1.4, 1.5, 1.16(d), and 8.4(c). Isler challenges the panel's findings concerning ERs 1.3, 1.5, and 8.4(c).

**¶27** The record supports the panel's findings that Isler violated ERs 1.3 and 8.4(c) by failing to act with reasonable diligence and promptness in representing M.J. and by misrepresenting the case status to her. Isler argues that his failure to promptly request a hearing on the petition was excusable because the mother was avoiding service. But the court granted Isler leave on September 8, 2010, to serve the mother by alternate means of service. Although Isler unsuccessfully attempted one means, he failed to pursue other means or to return to the court for direction. Additionally, Isler falsely told M.J. twice that he had requested a hearing.

**¶28** We reject the panel's determination that Isler violated ER 1.5 by charging the client an unreasonable fee contrary to the terms of the fee agreement. Isler did not charge M.J. more than the flat fee, and he

eventually refunded $400. Although he did not promptly refund this money, his lack of diligence does not make the fee amount unreasonable, as the State Bar argues. After deducting costs and making the refund, Isler retained $368 for 3.85 hours of work. This was not an unreasonable fee.

¶29 We also reject the panel's finding that Isler violated ER 8.4(c) by misrepresenting the terms of the fee agreement. The agreement provided that if M.J. terminated Isler's services, she "may be entitled to a refund of all or part of the flat fee based on the value of the legal services performed prior to termination." The July 21 bill did not seek to alter the terms of the fee agreement. Rather, it explained the value of Isler's services by setting forth his costs ($432) and charges for services based on an hourly rate (3.85 hours at $250 per hour). Although Isler's statement that he "waived" the amount in excess of the flat fee was inartful, it was not misleading.

¶30 We accept the panel's determination that Isler committed professional misconduct by violating ERs 1.3, 1.4, and 1.16(d). We also accept the finding that Isler violated ER 8.4(c) by misrepresenting the status of the petition to M.J., but we reject the finding that he violated this ER by misrepresenting the terms of the fee agreement. We reject the panel's determination that Isler violated ER 1.5.

## F. Count Seven

¶31 Client A.L. hired Isler in March 2011 to obtain a post-decree modification of child support and parenting time. Isler filed a petition for mediation on May 5. When mediation proved unsuccessful, he filed a petition to modify parenting time and child support on August 25 and served the father on December 21.

¶32 The court scheduled a resolution management conference for June 28, 2012, but continued it at Isler's request. On June 26 or 27, Isler emailed A.L. about the continuance. She terminated his services and went to court on June 28 because she did not understand what a "continuance" meant. The father also appeared and the resolution management conference proceeded. After subsequent evaluations ordered by the court, A.L. temporarily lost custody of her children.

¶33          The panel did not err by finding that Isler violated ER 1.3 by failing to promptly file the petition to modify parenting time and child support.  Isler argues that the petition could not have been filed until the parties participated in mediation.  The mediation was completed, however, by late June 2011.  Isler offers no explanation for taking two months to prepare and file a two-page petition.

¶34          The record also supports the panel's finding that Isler violated ER 1.4 by failing to keep A.L. reasonably informed.  A.L. testified that communication with Isler was "a problem" and she initiated contact "99 percent" of the time to learn what was transpiring in her case.  He did not return voicemail messages and spoke with A.L. only three times during the fifteen-month representation.  In one email, A.L. said she "[had] been trying to get a hold of [Isler] to see what is going on" and expressed concern that she "[had not] heard from [him]."  She learned of the resolution management conference from the court rather than Isler, and she did not hear from Isler for "several months" before the conference until Isler told her about the continuance.

¶35          We reject the panel's determination that Isler violated ER 8.4(d) by failing to tell A.L. that the court had continued the June 28, 2012 conference and by failing to appear.  A.L. testified that Isler did tell her about the continuance before June 28, but she attended because she was unsure what a continuance entailed.  Although the court explained the continuance on June 28, A.L. and the father elected to proceed that day.  In light of the continuance order, Isler had no obligation to appear on June 28 and did not abandon A.L. to represent herself.  Finally, the panel incorrectly found that A.L. "lost custody of her children and suffered enormously as a result" of her pro per appearance at the conference.  A.L. chose to proceed without counsel and lost custody temporarily following the court's examination and assessment of court-ordered evaluations of the parents and children.

¶36          We accept the panel's determination that Isler committed professional misconduct by violating ERs 1.3 and 1.4.  We reject the panel's determination that Isler violated ER 8.4(d).

### G.  Count Eight

¶37        Client M.M. retained Isler to petition the superior court to enforce a parenting-time agreement.  While the petition was pending, M.M. told Isler she had temporarily relocated to Florida.  Before a scheduled hearing on the petition, Isler settled the dispute without M.M.'s consent.  After M.M. refused to sign a stipulation reflecting the settlement, Isler filed the stipulation, which bore only the father's signature, and then moved to withdraw, misrepresenting to the court that M.M. had moved to an unknown address in Florida and had not responded to his telephone calls and emails.

¶38        The panel found that Isler violated ERs 1.2, 1.3, 1.4, 1.16, 3.2, 3.3, and 8.4(d).  Isler argues that the findings concerning M.M.'s relocation to Florida and her lack of agreement to settle the case are unsupported by the evidence.  Although evidence conflicted, M.M.'s testimony justifies the panel's findings.  We accept the panel's determination that Isler violated the above-listed ERs.

## II.  Sanction Imposed

¶39        Isler argues that he should not be disbarred in light of the panel's factual errors and the existence of significant mitigation evidence. We review the imposed sanction de novo.  *In re Alexander*, 232 Ariz. 1, 13 ¶ 48, 300 P.3d 536, 548 (2013).

¶40        We determine disciplinary sanctions in accordance with the American Bar Association *Standards for Imposing Lawyer Sanctions*.  Ariz. R. Sup. Ct. 58(k).  Following these standards, the panel correctly identified disbarment as the presumptive sanction.  "The sanction to be imposed, however, requires consideration of any pertinent aggravating and mitigating factors."  *In re Alexander*, 232 Ariz. at 14 ¶ 57, 300 P.3d at 549.

¶41        After considering the aggravating and mitigating factors, we conclude that disbarment is too severe a sanction.  While Isler was representing the clients discussed in this decision, he and his family were reeling from emotional and financial issues caused by his wife's severe mental health issues.  While these events do not excuse Isler's misconduct, they constitute significant mitigation.  "[T]he primary objectives of lawyer discipline are (1) to protect the public and the courts and (2) to deter the

[disciplined] attorney and others from engaging in the same or similar misconduct. *Id.* at 15 ¶ 63, 300 P.3d at 550 (alteration in original) (citation and internal quotation marks omitted). Disbarment is not necessary in this case to protect the public and courts or to deter Isler and other lawyers from engaging in similar misconduct. Notably, the State Bar recommended a two-year suspension, and we agree. A two-year suspension is an appropriate sanction.

## CONCLUSION

¶42 Isler committed professional misconduct by violating several ERs, as set forth in this decision. We impose a sanction of a two-year suspension from the practice of law, effective May 31, 2013.